UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES GROME,

    Plaintiff,

v.                                        CASE NO. 8:18-cv-2084-T-MCR

COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying his application for a period of disability and disability insurance benefits ("DIB"). Following an administrative hearing held on June 8, 2017, the assigned Administrative Law Judge ("ALJ") issued a decision on September 11, 2017, finding Plaintiff not disabled from September 22, 2014, the amended alleged disability onset date, through June 30, 2017, the date last insured.[2] (Tr. 8-21, 46-97.)

In reaching the decision, the ALJ found that through the date last insured, Plaintiff had the following severe impairments: post-traumatic stress disorder ("PTSD"), lumbar disc protrusion at L5-S1 causing neural foraminal narrowing,

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 11.)

[2] Plaintiff had to establish disability on or before June 30, 2017, his date last insured, in order to be entitled to a period of disability and DIB. (Tr. 11.)

and carpal tunnel syndrome ("CTS"). (Tr. 13.) The ALJ also found that through the date last insured, Plaintiff had the residual functional capacity ("RFC") to perform a reduced range of light work. (Tr. 15.) Then, after finding that Plaintiff was unable to perform his past relevant work, the ALJ concluded, in light of the testimony of the vocational expert ("VE"), that "there were jobs that existed in significant numbers in the national economy" that Plaintiff could have performed through his date last insured.[3] (Tr. 19-20.)

Plaintiff is appealing the Commissioner's decision that he was not disabled from September 22, 2014 through June 30, 2017. Plaintiff has exhausted his available administrative remedies and the case is properly before the Court. Based on a review of the record, the briefs, and the applicable law, the Commissioner's decision is **AFFIRMED**.

**I.      Standard of Review**

The scope of this Court's review is limited to determining whether the Commissioner applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the Commissioner's findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390

---

[3] Specifically, the VE testified that a hypothetical person with Plaintiff's age, education, work experience, and RFC, could perform the following representative occupations: (1) "table worker" – DOT code 734.687-014, light work, Specific Vocational Preparation ("SVP") of 2, with 250,000 jobs in the national economy; (2) "laundry sorter" – DOT code 361.687-014, light work, SVP of 2, with 300,000 jobs in the national economy; and (3) "garment sorter" – DOT code 222.687-014, light work, SVP of 2, with 225,000 jobs in the national economy. (Tr. 20.)

(1971). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995); *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating the court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual findings).

## II. Discussion

### A. The Parties' Positions

Plaintiff's first argument on appeal is that the ALJ erred in failing to comply with Social Security Ruling ("SSR") 00-4p, which imposes a duty on the ALJ to identify and resolve apparent conflicts between the Dictionary of Occupational Titles ("DOT") and the VE's testimony, as to the "table worker" job. Specifically, Plaintiff points out that under the DOT, the "table worker" job requires frequent fingering, which was inconsistent with the ALJ's RFC assessment limiting Plaintiff

3

only to occasional fingering. As such, Plaintiff contends that the ALJ should either eliminate the "table worker" job from consideration or ask the VE to explain how a person limited to occasional fingering could perform a job requiring frequent fingering. Defendant agrees that in light of *Washington v. Commissioner of Social Security*, 906 F.3d 1353, 1361-65 (11th Cir. 2018), and the specific facts of the present case, the Commissioner should no longer consider the "table worker" job. Nevertheless, Defendant maintains that the two remaining representative occupations cited by the VE support the ALJ's finding that there was other work existing in significant numbers in the national economy that Plaintiff could have performed.

Plaintiff's second argument concerns those two occupations, namely, the "laundry sorter" job and the "garment sorter" job. He argues that the ALJ erred in relying on the VE's testimony that there were 300,000 "laundry sorter" jobs and 225,000 "garment sorter" jobs in the national economy. According to Plaintiff, these numbers "appear to be grossly overstated [even to] a lay person," and, at a minimum, the ALJ should have questioned the numbers cited by the VE. (Doc. 18 at 8.) Plaintiff adds:

> The beginning part of the [VE's] response gives a clue as to why the numbers appear to be so overstated. The [VE] stated[:] "I can give you a representative group." Although it is not clear through his testimony, it should be apparent to the [ALJ] and this [C]ourt what he means by a representative group.
>
> The Department of Labor, Bureau of Labor Statistics[,] groups

occupations by similarities. The groups are known [as] specific occupational categories (SOC). The Department of Labor has developed a crosswalk grouping DOT numbers into SOC groups. The SOC group for garment sorter is 51-9199 "production workers, all other." . . . There are 1590 separate DOT occupations in SOC group 51-9199. According to the report from the Bureau of Labor Statistics, Occupational Employment Statistics, there are 230,760 persons employed in this SOC group. So how did the [VE] come up with 225,000 jobs for this one DOT occupation? He did not. The number was for the entire group. The job he identified was a representative job within the group. The problem with the testimony is that the adjudicator is not advised of the number of jobs for that one particular DOT occupation. The hypothetical to the [VE] only allowed for occasional fingering. Although the one DOT occupation cited by the [VE] only requires occasional fingering, the other DOT occupations may require frequent fingering. The judge cannot determine whether this is the case, without knowing the other DOT numbers included in the [VE's] estimates. Therefore, he cannot comply with SSR 00-4P without having this information. . . .

Also attached is information regarding the occupation of a laundry sorter (classifier)[.] [T]his job is found within group 51-9061 (inspectors, testers, sorters, samplers, and weighers). There are 782 DOT occupations within this group. In the entire group, there are 557,510 persons employed. It is inconceivable that 225,000 of these jobs involves [sic] classifying laundry.
. . .
In this case, had the [ALJ] not included the limitation of occasional fingering, it most likely would be an exercise in futility to remand this matter for further [VE] testimony. However, many of the jobs included in the occupational groups, in which garment and laundry sorter are found, may require frequent fingering, which exceeds the [RFC] set forth by the [ALJ] in his hypothetical.
. . .
The [VE] is free to give an opinion [on] the number of jobs for a particular DOT occupation, based on his experience and consideration of reliable governmental publications, but the numbers must be for that DOT occupation only, not for a cluster of DOT occupations, where the VE does not identify the other occupations.

This matter should be remanded with directions to the [ALJ] to ask

5

the [VE] to give an opinion as to the estimated number of jobs for the identified DOT occupation only, not for the entire group. The Plaintiff is aware that there are no publications which match numbers of jobs with individual DOT numbers, however, this does not mean the [VE] cannot extrapolate the numbers and give an estimate based on his or her experience.

(*Id.* at 8-11.)

Defendant responds to Plaintiff's second argument as follows:

Plaintiff asks this Court to invent out of whole cloth a new rule that would require ALJs to identify conflicts between the [VE's] testimony regarding the approximate number of jobs available in the national economy and the number of jobs indicated in the OES.[4] . . .

Plaintiff now contends that the numbers cited by the VE are unreliable because they are inconsistent with the numbers on the OES from the Bureau of Labor Statistics. Plaintiff has provided no basis, however, to show that the OES job numbers are reliable given the specific occupations the VE identified in the *DOT* or that the VE's estimate of available jobs is unreliable. In the absence of reliable evidence to the contrary, the VE's testimony supporting the ALJ's finding as to the number of jobs must stand. . . .

Moreover, as Plaintiff recognizes, the OES breaks down occupations into job groups, known as [SOC], that pertain to multiple occupations listed in the *DOT*.[5] Notably, the SOC classification system is different from the *DOT*'s classification system. . . . As a result, the occupational classifications encompassed by the OES program do not overlap with or correspond to the *DOT*'s occupational classifications. . . . Plaintiff's challenge to the VE's testimony regarding the availability of jobs for each *DOT* category is therefore

---

[4] OES (or Occupations Employment Statistics) is a publication by the Department of Labor, Bureau of Labor Statistics.

[5] The Bureau of Labor Statistics provides employment statistics for various occupations based on its OES program. The OES program uses the Office of Management and Budget's SOC system for classifying "workers and jobs into occupational categories." . . .

> problematic because he relies on statistics gleaned from a different classification system, and he fails to adequately explain the relevance of the specific OES data he relies on. . . .

(Doc. 19 at 6-7, 9-10 (emphasis in original).)

### B. Analysis

At step five of the sequential evaluation process,[6] the ALJ must determine whether the claimant is capable of making a successful adjustment to other work (as opposed to his past relevant work) that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4)(v). "Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions of the country." *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019) (per curiam) (citing 20 C.F.R. § 404.1566(a)); *see also* 20 C.F.R. § 404.1566(b) ("Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which you are able to meet with your physical or mental abilities and vocational qualifications.").

In determining whether jobs exist in significant numbers either in the region where the claimant lives or in several regions of the country, the ALJ "will take administrative notice of reliable job information available from various governmental and other publications," such as the DOT, published by the

---

[6] The Commissioner employs a five-step process in determining disability. *See* 20 C.F.R. § 404.1520(a)(4).

Department of Labor; County Business Patterns, published by the Bureau of the Census; Census Reports, also published by the Bureau of the Census; Occupational Analyses, prepared for the SSA by various State employment agencies; and the Occupational Outlook Handbook, published by the Bureau of Labor Statistics. 20 C.F.R. § 404.1566(d). The ALJ may also decide to use the services of a VE or other specialist. 20 C.F.R. § 404.1566(e).

"The ALJ, relying on the VE's testimony, determines whether a specific number of jobs constitutes a significant number." *Webster*, 773 F. App'x at 555 (citing, *inter alia*, 20 C.F.R. § 404.1512(g)); *see also Brooks v. Barnhart*, 133 F. App'x 669, 670 (11th Cir. 2005) (per curiam) ("The ALJ, relying on the VE's testimony, and not the VE, determines whether a specific number of jobs constitutes a significant number."). Thus, the question is not whether the VE's "testimony is supported by substantial evidence," but rather "whether the ALJ's decision is supported by substantial evidence." *Pace v. Comm'r of Soc. Sec.*, 760 F. App'x 779, 781 (11th Cir. 2019) (per curiam) (emphasis omitted).

The Eleventh Circuit "has never held that a minimum numerical count of jobs must be identified in order to constitute work that 'exists in significant numbers' under the statute and regulations." *Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 934 (11th Cir. 2015) (per curiam). "The appropriate focus under the regulation, however, is the national economy," not the local economy where the claimant resides. *Allen v. Bowen*, 816 F.2d 600, 603 (11th Cir. 1987).

8

Plaintiff now contends that the ALJ erroneously relied on the VE's testimony that there were 300,000 "laundry sorter" jobs and 225,000 "garment sorter" jobs in the national economy, to support his finding that there was a significant number of jobs in the national economy that Plaintiff could have performed through his date last insured. However, at the administrative hearing, Plaintiff's attorney stipulated to the VE's qualifications and did not question the job numbers cited by the VE, the methodology used to arrive at those numbers, and/or the consistency of the VE's testimony with the information provided by any other source, including the OES. (*See* Tr. 91, 95-97.) The Supreme Court has recently stated that if a claimant does not demand the underlying evidence supporting a VE's testimony, the VE's "testimony may count as substantial evidence even when unaccompanied by supporting data." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019); *see also Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012) (per curiam) (affirming the ALJ's reliance on the VE's testimony and noting that the claimant neither offered any evidence controverting the VE's testimony nor objected to it); *Hurtado v. Comm'r of Soc. Sec.*, 425 F. App'x 793, 795-96 (11th Cir. 2011) (per curiam) (affirming the ALJ's reliance on the VE's testimony in part because at the hearing, the claimant "did not object to the VE's testimony or qualifications, offer any evidence controverting the VE's testimony, or even question the VE"); *Leija v. Colvin*, Case No.: 1:13-cv-1575GSA, 2015 WL 1439933, *5 (E.D. Cal. Mar. 26, 2015) (affirming the ALJ's

decision and noting that "although Plaintiff was represented by counsel at his administrative hearing, counsel made no attempt to question the VE regarding her methodology or to challenge her testimony regarding the numbers of jobs available that Plaintiff could perform," and also stating that "no 'additional foundation' beyond a VE's 'recognized expertise' is required for the VE's testimony regarding the availability of jobs").

Moreover, to the extent Plaintiff argues that the ALJ was required to independently verify the VE's testimony, in the Eleventh Circuit, "the ALJ is only required to do so when there is a conflict between the VE's testimony and the DOT." *Webster*, 773 F. App'x at 555 (citing *Washington*, 906 F.3d at 1365). Here, the alleged "conflict is between the number of available jobs the VE reported and the number of available jobs shown in the figures provided by the Bureau of Labor Statistics through its publication of [OES]." *Id.* at 556. As explained in *Webster*:

> Unlike the situation in which the VE's testimony conflicts with the DOT, [the Eleventh Circuit] has not placed an affirmative duty on the ALJ to independently investigate a conflict between the VE's testimony and job availability figures provided by the Bureau of Labor Statistics in the OES. Furthermore, the figures in the OES are not part of the SSA's regulatory scheme. 20 C.F.R. § 404.1566(d)(1), (5).

*Id.*[7]; *see also Therrell v. Berryhill*, Case No.: 1:15-cv-00782-LF, 2017 WL

---

[7] Plaintiff supports his position by citing to *Groettum v. Commissioner of Social Security*, Case No. 2:17-cv-611-FtM-29CM, 2019 WL 488260, *15 (M.D. Fla. Jan. 7,
(continued...)

10

1437316, *6 (D.N.M. Apr. 21, 2017) ("Job data in the OES naturally varies from the DOT, as the OES classifies jobs by census codes, known as [SOC] codes, rather than DOT codes."); *Leija*, 2015 WL 1439933 at *5 ("The SOC classification system is different from the DOT's classification system. As a result[,] the occupational classifications encompassed by the . . . OES program do not overlap with or correspond to the DOT's occupational classifications. Thus, Plaintiff's challenge to the VE's testimony regarding the availability of jobs for each DOT category at issue is inherently problematic as it relies on statistics gleaned from a different classification system. Furthermore, Plaintiff does not adequately demonstrate the relevancy of the specific OES data he relies on.").

As such, there is no requirement that an ALJ independently investigate and resolve conflicts between a VE's testimony and information provided by the OES regarding job availability figures. Notably, the OES is not listed among the potential resources that could be used in determining the number of available jobs under 20 C.F.R. § 404.1566(d). *Cf. Therrell*, 2017 WL 1437316 at *7

---

[7](...continued)
2019) (remanding the case to the ALJ for a determination of whether there was a significant number of jobs that Plaintiff could perform, because the district court could not discern from the record what the actual number of jobs was in the national economy and even if it could, it was the Commissioner's, not the court's, responsibility to determine whether that number was significant) (report and recommendation adopted by 2019 WL 290598 (M.D. Fla. Jan. 23, 2019)). However, *Groettum* was decided several months before the Eleventh Circuit's decision in *Webster*. Additionally, *Groettum* is distinguishable, because in that case the claimant actually questioned the VE about the methodology used to determine the numbers of available jobs and the VE testified that "he could not isolate the numbers to the specific DOT codes he identified." 2019 WL 488260 at *15.

(rejecting, for lack of "evidentiary support," the claimant's contention that the job numbers identified by the VE were "grossly inflated" where the claimant presented data from a program called "Job Browser Pro," which was "not among the examples listed in 20 C.F.R. § 404.1566(d) of data sources considered to provide reliable job information" and was not "sufficiently reliable to contradict the VE's testimony"). Thus, Plaintiff's position that "many of the jobs included in the occupational groups, in which garment and laundry sorter are found, *may* require frequent fingering, which exceeds the [RFC] set forth by the [ALJ] in his hypothetical" (Doc. 18 at 10 (emphasis added)), seems speculative at best.

Furthermore, an ALJ is authorized to rely on the testimony of a VE in determining the number of available jobs, and there is no requirement that the VE produce all data considered in reaching his conclusions. *See Bryant v. Comm'r of Soc. Sec.*, 451 F. App'x 838, 839 (11th Cir. 2012) (per curiam) ("The Social Security regulations provide that an ALJ may rely on a VE's knowledge and expertise, and they do not require a VE produce detailed reports or statistics in support of her testimony."). Here, the VE testified, in relevant part, that there were 300,000 "laundry sorter" jobs and 225,000 "garment sorter" jobs in the national economy that a hypothetical person with Plaintiff's age, education, work experience, and RFC could perform. (Tr. 20, 93.) Based on the VE's testimony, the ALJ concluded that through the date last insured, Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers

in the national economy." (Tr. 20.) The total number of available jobs cited by the VE satisfies the Commissioner's burden of identifying a significant number of jobs in the national economy. *See Atha*, 616 F. App'x at 935 (upholding an ALJ's finding that 23,800 jobs nationwide established the existence of work in significant numbers); *Brooks*, 133 F. App'x at 671 ("The ALJ's finding that 840 polisher, document preparer, and bonder jobs constituted a significant number in the national economy is supported by substantial evidence. It is the ALJ, relying on the VE's testimony, who determines whether 840 jobs constituted a significant number; the VE's determination is not binding."); *Allen*, 816 F.2d at 602 (upholding an ALJ's finding that 80,000 jobs nationwide established the existence of work in significant numbers).

In short, as long as the ALJ's findings are based on correct legal standards and are supported by substantial evidence,[8] the Commissioner's decision must be affirmed even if the reviewer would have reached a different conclusion.[9] *See Olney v. Comm'r of Soc. Sec.*, Case No.: 2:17-cv-349-FtM-29CM, 2018 WL 4760799, *14 (M.D. Fla. July 30, 2018) (stating that "although the job number

---

[8] The ALJ's finding as to the existence of a sufficient number of jobs is a finding of fact reviewed under the substantial evidence standard, and the Court cannot re-weigh the evidence or substitute its judgment for that of the Commissioner. *See Allen*, 816 F.2d at 602.

[9] To the extent Plaintiff asks the Court to adopt a categorical rule about VE testimony, the Court declines to do so. *See Biestek*, 139 S. Ct. at 1157 (rejecting the claimant's request "for a categorical rule, applying to every case in which a vocational expert refuses a request for underlying data," and stating that "[t]he inquiry, as is usually true in determining the substantiality of evidence, is case-by-case").

data presented by Plaintiff could support an alternative finding, the question for the Court is whether substantial evidence supports the ALJ's findings, not whether the record could support a different one") (report and recommendation adopted by 2018 WL 4357134 (M.D. Fla. Sept. 13, 2018)).  The Court concludes that substantial evidence supports the ALJ's reliance on the VE's testimony to conclude that there was a significant number of jobs existing in the national economy that Plaintiff could have performed through his date last insured.

Accordingly, it is **ORDERED**:

1. The Commissioner's decision is **AFFIRMED**.

2. The Clerk of Court is directed to enter judgment consistent with this Order and close the file.

**DONE AND ORDERED** at Jacksonville, Florida, on September 23, 2019.

MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record